UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

DIANA CORCORAN-BOWERS,

 Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

 Defendant.
_____/

## COMPLAINT FOR DAMAGES

 The Plaintiff hereby sues the Defendant and files this Complaint for Damages, and says:

## THE PARTIES AND JURISDICTION

 1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

 2. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

3. The Plaintiff, DIANA CORCORAN-BOWERS, is a resident of Matthews, North Carolina.

4. The Defendant, CARNIVAL CORPORATION, is authorized to do business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida.

5. The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b. Had an office or agency in this state and/or county; and/or

    c. Engaged in substantial activity within this state; and/or

    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF INCIDENT.** The incident in this case occurred on or about March 7, 2015, approximately 10:00 a.m. to 11:00 a.m.

8. **LOCATION OF ACCIDENT.** This incident occurred onboard the Carnival *Pride* cruise ship on the Lido deck just inside the sliding glass door which leads passengers to and from the enclosed buffet and/or dining area, on the tiled flooring.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF ACCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel. The Plaintiff is not in possession of the Passenger Contract Ticket. The Defendant is in possession of the Passenger Contract Ticket or a facsimile thereof.

10. **DESCRIPTION OF THE INCIDENT.** Carnival Corporation doing business as Carnival Cruise Lines owns and/or manages more than 20 cruise ships under the name of Carnival Cruise Lines alone. On each and every one of the cruise ships, Carnival has a Lido deck, the deck on which the pool and other outdoor amenities exist. Carnival knows this deck on each of these ships is an extremely high traffic deck on which most of the passengers visit once a day. Carnival also knows for these reasons it is crucial for passenger safety to keep the deck clean and free of any foreign substance and dry. Further, when this deck is wet, it is slippery. Carnival also knows it must inspect the decks of the ship, especially the Lido deck, on a regular basis in order to prevent slippery and dangerous conditions. Additionally, Carnival knows that its flooring, especially on the Lido deck, and on the area of tiled flooring where Plaintiff's incident occurred becomes wet from condensation created by the mixture of warm, outdoor tropical air and cool air-conditioned air in the Lido deck dining area. Further, Carnival knows that wet bathers walk from the outdoor pool area on the Lido deck to the interior dining area where Plaintiff's incident occurred on a regular and ongoing basis. When this particular area of flooring becomes, as it does on a regular and ongoing basis, Carnival has a duty to block off the area, post warning signs in the area, or post personnel in the area to warn and block pedestrians from walking on the wet slippery tiled floor.

11. On the date of this incident, Carnival allowed a large, thin, clear, and evenly spread layer of water to stand on an area of tiled flooring in the dining area on the Lido deck. This large area of wetness was thin, clear, evenly spread and blended in with the shiny tiled flooring. This large area of wetness was present for an extended period of time based on the fact that it covered the entire tiled flooring of the subject area. This area of wetness was present on the Lido deck interior dining area's tiled flooring just inside the sliding glass door which leads passengers to and from the outdoor pool area. Carnival knows that this area of flooring constantly and repetitively becomes wet due to condensation created by the mixture of warm, outdoor tropical air and cool air-conditioned are just inside the door near the entrance/exit between the outdoor pool area of the Lido deck and the Lido deck's interior dining area. Carnival also knows that this area of tiled flooring becomes wet on a regular and ongoing basis due to wet bathers walking over the tiled flooring. This large area of wetness was created by the condensation for which Carnival knows is a constant and repetitive problem. Further, Carnival knows that this area of tiled flooring is extremely slippery when it is wet. Despite having knowledge of the continuous and repetitive condensation problem on the flooring of the subject area, Carnival's crewmembers failed to post any signs, cones, or other warnings, block off the area, put blowers on the floor of the area, put towels down on the area to dry the floor, and failed to guard over the area and use personnel to warn passengers away, even though the shininess of the tiled floor hid or camouflaged the existence of the water itself.

12. In the alternative, the Lido deck interior dining area's tiled flooring just inside the sliding glass door which leads passengers to and from the outdoor pool area becomes wet on a regular and ongoing basis due to wet bathers walking over the tiled flooring. On the date of the incident, Carnival allowed a large, thin, clear, and evenly spread layer of water to stand on an area of tiled flooring in the dining area on the Lido deck. This large area of wetness was thin, clear, evenly spread and blended in with the shiny tiled flooring. This large area of wetness was present for an extended period of time based on the fact that it covered the entire tiled flooring of the subject area. Carnival knows that this area of tiled flooring becomes wet due to wet bathers walking over it on a regular and ongoing basis. Carnival also knows that this area of flooring is extremely slippery when it is wet. Despite having knowledge of the fact that wet bathers walk over this portion of tiled flooring on a regular and ongoing basis, as they did on the date of the incident, Carnival's crewmembers failed to post any signs, cones, or other warnings, block off the area, put blowers on the floor of the area, put towels down on the area to dry the floor, and failed to guard over the area and use personnel to warn passengers away, even though the shininess of the tiled floor hid or camouflaged the existence of the water itself.

13. The Plaintiff, DIANA CORCORAN-BOWERS, walked into the subject area on the Lido deck on the date of the subject accident. Ms. Corcoran-Bowers walked in the large, camouflaged area of wetness and slipped and fell hard onto her back and buttocks. This caused her to suffer serious injuries. These injuries are permanent and debilitating.

**COUNT I**
**NEGLIGENCE**

14. The Plaintiff, DIANA CORCORAN-BOWERS, hereby adopts and realleges each and every allegation in paragraphs 1 through 13, above.

Case 1:16-cv-20248-MGC   Document 1   Entered on FLSD Docket 01/20/2016   Page 6 of 10

15. **DUTIES OWED BY THE DEFENDANT**.  The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein.  See, *Hall vs. Royal Caribbean Cruises, Limited*, 888 So. 2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); *The Moses Taylor*, 4 Wall. 411, 71 U.S. 411, 18 L. Ed. 397 (1866); *Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248 (Fla. 3d DCA 1985).  The Defendant also owed a "duty to exercise reasonable care under the circumstances".  See, *Harnesk vs. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991).  The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit."  See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985).  *Vierling v. Celebrity Cruises*, 339 F.3d 1309, 1319-20 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the 'slightest negligence' renders a carrier liable).  The cruise line has a duty to provide safe ingress and egress to and from the ship.  *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F.2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So.2d 853 (Fla. 3DCA 2004); and *Chan v. Society Expeditions*, 123 F.3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F 3rd 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319 (11th Cir. 2003).

16. The Defendant breached those duties and was negligent by:

   a. Failing to keep the floor clean and dry to allow normal and safe foot traffic;

   b. Failing to inspect for, and to observe on a reasonably frequent basis, water, on the floor from whatever source;

   c. Observing that the flooring was wet and slippery with foreign substances but failing to clean and dry the flooring;

   d. Failing to clean and dry mop water and spills or areas of wetness from whatever source with dry mops, towels, blowers, and by other means;

   e. Failing to warn that the floor was slippery and hazardous and/or wet by reasonable means including but not limited to properly and reasonably posting warning notices, signs, cones, or other devices in the area;

   f. Failing to provide a mat or other floor covering over the slippery floor to allow people who traverse the floor area to use at least a section of the floor;

   g. Failing to cordon or block off the wet and slippery area when it was discovered through reasonable inspection;

   h. Failing to properly and reasonably train its employees in the proper methods of inspecting for wet areas, cleaning and drying wet area, warning of wet areas, blocking off wet areas, and monitoring the activities of people in the area;

   i. Failing to properly and reasonably monitor and control the activities of people in an area especially an area where Defendant knows is an area of high traffic and continuous problems;

j. Failing to prevent distractions to invitees and failure to design a facility or an operation in the facility which does not have distractions to customers which would cause accidents;

k. Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case;

l. Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries;

m. Providing negligent maintenance to the area or to the premises;

n. Failing to otherwise maintain the area and the premises in a safe and reasonable manner;

o. Designing and building and not changing the deck which allowed substances and water to accumulate in an area for an unreasonable amount of time;

p. Allowing substances and water to accumulate on decks;

q. Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence;

r. Failure to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence; and

s. Failing to otherwise provide its passengers with a safe place to walk.

17. The Defendant created a dangerous condition on the subject ship and allowed the dangerous condition to exist thereby causing an accident on the date referenced above in which the Plaintiff was severely injured.

18. The Defendant either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

19. The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the size and/or nature of the dangerous condition; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

20. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operations.

21. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant.

22. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

23. As a result of the Defendant's negligence, the Plaintiff has suffered bodily injury resulting in economic damages in the past and in the future including but not limited to medical expenses including but not limited to the expense of physicians, hospitalization, medical and nursing care and treatment, surgical procedures, and physical therapy, and non-economic damages in the past and in the future including but not limited to pain, suffering, disability, physical impairment, loss of important bodily functions, scarring, disfigurement, mental anguish, and loss

of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

24. Wherefore, the Plaintiff demands Judgment against the Defendant for **economic damages** in the past and in the future including but not limited to medical expenses including but not limited to the expense of physicians, hospitalization, medical and nursing care and treatment, surgical procedures, and physical therapy, and **non-economic damages** in the past and in the future including but not limited to pain, suffering, disability, physical impairment, loss of important bodily functions, scarring, disfigurement, mental anguish, and loss of capacity for the enjoyment of life, all court costs, all interest under the maritime law or otherwise which accrues from the date of the incident described herein, and any and all other damages which the Court deems just or appropriate.

Dated: January 20, 2016

**HICKEY LAW FIRM, P.A.**
*Attorney for Plaintiff*
1401 Brickell Avenue
Suite 510
Miami, FL 33131-3504
P: 305.371.8000
F: 305.371.3542


By:     *s/JOHN H. HICKEY*
          JOHN H. HICKEY, ESQ.